UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY MEDINA,

                        Plaintiff,

                                                    9:05-CV-1460
        -v.-                                        (DNH/GHL)

J. HUNT, Correction Officer, Great Meadow C.F.;
W. SPRAGUE, Correction Officer, Great Meadow C.F.;
JOHN MICHAEL, Correction Officer, Great Meadow C.F.,
RAYMOND BOYEA, Correction Officer,

                        Defendants.
_____

APPEARANCES:                                OF COUNSEL:

ANTHONY MEDINA, 99-A-2999
  Plaintiff, *Pro Se*
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

HON. ANDREW M. CUOMO                         CHRISTOPHER W. HALL ESQ.
Attorney General for the State of New York   Assistant Attorney General
Department of Law
The Capitol
Albany, NY 12224

GEORGE H. LOWE, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Generally,

Anthony Medina ("Plaintiff"), alleges that four employees of the New York State Department of

Correctional Services ("DOCS")–Correction Officers J. Hunt, W. Sprague, John Michael and

Raymond Boyea ("Defendants")–violated his rights under the First, Eighth and Fourteenth Amendments when, between approximately October 21, 2003, and December 5, 2003, they (1) conspired to use excessive force against him, (2) used excessive force against him, (3) used that excessive force in response to his having engaged in protected activity, and (4) were deliberately indifferent to his health and safety. (*See generally* Dkt. No. 29 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 54.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.   BACKGROUND

### A.   Summary of Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint alleges as follows:

1.      On October 21, 2003, Plaintiff filed a motion for contempt against DOCS officials in a separate federal court prisoner civil rights class action in the Southern District of New York, specifically, *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.);[1]

2.      Between some point before the date on which he filed the referenced contempt motion and December 5, 2003, Defendants harassed Plaintiff in the following ways because of his litigation activity: (a) they verbally harassed him; (b) they physically harassed him by subjected him to unnecessary "pat and strip frisk[s]"; and (c) they filed false misbehavior reports

---

[1]      (Dkt. No. 29, ¶¶ 52-53 [Plf.'s Am. Compl.]; Dkt. No. 67, Part 2, at 7, 9-11 [Plf.'s Opp. Memo. of Law, identifying the name and case number of the action].) *See also Clarkson v. Coughlin*, 91-CV-1792, Plf.'s "Reply Memorandum" (S.D.N.Y. filed Oct. 21, 2003) (civil rights class action), *related proceeding*, *Medina v. NYS DOCS*, 03-CV-9249 (S.D.N.Y.).

2

against him;[2]

3.      In addition, on December 5, 2003, Defendants took a form of adverse action against Plaintiff in retaliation for his having filed the referenced motion for contempt: they conspired with each other to use excessive force against him, and they in fact did use excessive force against him;[3]

4.      Specifically, on December 5, 2003, Defendant Hunt escorted Plaintiff from his cell for the alleged reason that Plaintiff was to attend a disciplinary proceeding; he brought Plaintiff to the disciplinary office (which was locked and uninhabited); and then intentionally left Plaintiff alone in the hallway "so that [D]efendants Boyea, Sprague, and Micheal [sic] could physically brutalize [him]";[4] and

5.      Once Plaintiff was alone in the hallway, Defendants Boyea, Sprague, and Micheal appeared and physically brutalized Plaintiff.[5]

6.      As a result of injuries he experienced due to these violations, Plaintiff seeks money damages, but no injunctive relief, from Defendants.[6]

Finally, it bears noting that Plaintiff sues Defendants in both their official and individual capacities.[7]

---

[2]      (Dkt. No. 29, ¶¶ 22, 52-53 [Plf.'s Am. Compl.].)

[3]      (*Id*. at ¶¶ 19, 46-49, 52-53.)

[4]      (*Id*. at ¶¶ 14-20, 46.)

[5]      (*Id*. at ¶¶ 20-40, 47-49.)

[6]      (*Id*. at ¶¶ 55-59.)

[7]      (*Id*. at ¶ 9.)

I note that, in construing Plaintiff's Amended Complaint, I have afforded it the liberal

construction that all pleadings must be afforded, under Fed. R. Civ. P. 8.  *See* Fed. R. Civ. P. 8(f)

("All pleadings shall be so construed as to do substantial justice.").  I have also afforded it the

extra-liberal construction normally afforded to the pleadings of *pro se* civil rights litigants, out of

special solicitude to them due to their general lack of familiarity with legal terminology and the

litigation process.[8]  I have done this with some hesitation, because it is clear that (before filing

his Amended Complaint) Plaintiff had acquired considerable litigation experience.[9]  Some of

---

[8]      *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint . . . must be
held to less stringent standards than formal pleadings drafted by lawyers . . . .") [internal
quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004)
("[W]hen the plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally,
particularly when they allege civil rights violations.") [citation omitted]; *Cruz v. Gomez*, 202 F.3d
593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to
raise the strongest arguments that they suggest.") [internal quotation marks and citation omitted];
*Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997) ("In evaluating whether a plaintiff has met
the[] requirements [under Rule 12(b)(6)], we hold complaints prepared *pro se* 'to less stringent
standards than formal pleadings drafted by lawyers.'") [quoting *Haines v. Kerner*, 404 U.S. 519,
520 (1972)]).

[9]      Specifically, before Plaintiff filed his Amended Complaint in this action on
February 5, 2007, he had filed at least ***twelve*** federal or state court actions or appeals regarding
his imprisonment.  (*See* Dkt. No. 1, ¶ 11 [Plf.'s Compl., listing most of his previous litigations
filed before Sept. 1, 2005].)  *See also Medina v. N.Y.S. DOCS*, 03-CV-9249 (S.D.N.Y. filed Nov.
21, 2003) (prisoner civil rights proceeding); *Medina v. McGinnis*, 04-CV-2515 (S.D.N.Y. filed
March 31, 2004) (habeas corpus proceeding), *appeal dismissed*, No. 04-6433 (2d Cir. June 29,
2005); *Medina v. Senkowski*, 766 N.Y.S.2d 915 (N.Y.S. App. Div., 3d Dept., 2003) (Article 78
proceeding); *Medina v. Goord*, Index No. 001767/2005 (N.Y. Sup. Ct., Chemung County)
(Article 78 proceeding filed June 6, 2005); *Medina v. New York*, Claim No. 109170 (N.Y. Ct.
Claims, filed Apr. 9, 2004) (prisoner action alleging inadequate prison conditions); *Medina v.
New York*, Claim No. 111093 (N.Y. Ct. Claims, filed July 1, 2005) (prisoner action alleging
assault and loss or destruction of personal property); *Medina v. New York*, Claim No. 106664,
Decision (N.Y. Ct. Claims, filed March 2, 2007) (awarding Plaintiff $1,500 at trial in prisoner
action for assault, filed before September of 2005); *Medina v. New York*, Claim No. 109178,
Decision (N.Y. Ct. Claims, filed Feb. 28, 2007) (granting in part Plaintiff's motion to compel
discovery in prisoner action alleging abuse, retaliation and confiscation of personal property,
filed before September of 2005); *Medina v. New York*, Claim No. 110990, Decision (N.Y. Ct.

those actions were resolved in Plaintiff's favor, or partially so.[10]  Not surprisingly, his Amended

Complaint is typed, organized, articulate, and verified.  (*See* Dkt. No. 29.)  Moreover, his

litigation skills are such that he has filed several motions in this action that have been granted (or

partially granted).  (*See* Dkt. Nos. 5, 7, 18, 27, 28, 32, 45, 56, 63, 64.)  However, after carefully

considering the nature of his other court actions, I find that Plaintiff's litigation experience is not

quite as extensive as that of the plaintiffs whose special solicitude the Second Circuit has

diminished or revoked due to their obvious familiarity with the legal system and pleading

requirements.[11]  Plaintiff is cautioned, however, that he is fast becoming more a pro litigant than

---

Claims, filed Jan. 7, 2008) (awarding Plaintiff $112 at trial on Nov. 28, 2007, in prisoner action
for loss of personal property during prison transfer, filed before September of 2005); *Medina v.
New York*, Claim No. 111940 (N.Y. Ct. Claims, filed Feb. 2, 2006) (prisoner action alleging
wrongful confinement); *Medina v. Selsky*, 814 N.Y.S.2d 828 (N.Y.S. App. Div., 3d Dept., 2006)
(Article 78 proceeding); *Medina v. Selsky*, 812 N.Y.S.2d 384 (N.Y.S. App. Div., 3d Dept., 2006)
(Article 78 proceeding).

[10]     *See Medina v. New York*, Claim No. 106664, Decision (N.Y. Ct. Claims, filed
March 2, 2007) (awarding Plaintiff $1,500 at trial in prisoner action for assault, filed before
September of 2005); *Medina v. New York*, Claim No. 109178, Decision (N.Y. Ct. Claims, filed
Feb. 28, 2007) (granting in part Plaintiff's motion to compel discovery in prisoner action alleging
abuse, retaliation and confiscation of personal property, filed before September of 2005); *Medina
v. New York*, Claim No. 110990, Decision (N.Y. Ct. Claims, filed Jan. 7, 2008) (awarding
Plaintiff $112 at trial on Nov. 28, 2007, in prisoner action for loss of personal property during
prison transfer, filed before September of 2005).

[11]     *See*, *e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001)
(unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999)
(Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith,
M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion),
*aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*,
Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32
F.3d 27, 31 (2d Cir. 1994); *see also Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977)
[citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring); *Saunders
v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2-3 & nn.8-15 (N.D.N.Y. Oct. 18, 2006) (Hurd, J.,
adopting Report-Recommendation of Lowe, M.J.), *appeal dismissed*, No. 07-1014, Order (2d
Cir. filed Nov. 9, 2007) (finding Plaintiff's appeal to be frivolous where he objected to, *inter alia*,

a *pro se* litigant.[12]

**B.     Summary of Grounds in Support of Defendants' Motion**

Defendants' motion for partial summary judgment is premised on the following three

grounds: (1) Plaintiff has failed to state a claim of conspiracy to violate his Eighth Amendment

rights because he fails to allege facts plausibly suggesting that any Defendant conspired with a

private or "external" party; (2) Plaintiff has failed to establish a claim for retaliation under the

First Amendment because he has failed to adduce evidence that Defendants assaulted him on

December 5, 2003, because Plaintiff had engaged in constitutionally protected activity between

October 21, 2003, and October 5, 2003; and (3) Plaintiff has failed to establish that Defendant

Hunt was personally involved in any of the constitutional violations alleged.  (Dkt. No. 55, at 5-9

[Defs.' Memo. of Law].)

---

the district court's revocation of his special solicitude based on his extraordinary litigation
experience).

[12]     For example, I note that, after filing his Amended Complaint in this action on
February 5, 2007, and before filing his opposition to Defendants' motion for partial summary
judgment on March 1, 2008, he appears to have filed at least ***five*** more federal or state court
actions or appeals regarding his imprisonment.  *See Medina v. Gonzalez*, 08-CV-1520,
Complaint (S.D.N.Y. filed Feb. 14, 2008) (prisoner civil rights action); *Medina, et al. v. Napoli*,
07-CV-0497, Complaint (W.D.N.Y. filed July 30, 2007) (prisoner civil rights action); *Medina v.
Wright*, Index. No. 001929/2007 (N.Y. Sup. Ct., Chemung County) (Article 78 proceeding filed
June 7, 2007); *Medina v. Napoli*, Index. No. 001931/2007 (N.Y. Sup. Ct., Chemung County, filed
June 7, 2007) (Article 78 proceeding, subsequently transferred to Third Dept., *see Medina v.
Napoli*, 856 N.Y.S.2d 889 [N.Y.S. App. Div., 3d Dept., 2008]); *Medina v. New York*, Claim No.
114230 (N.Y. Ct. Claims, filed Sept. 13, 2007) (prisoner action alleging improper release of
medical records).

## II.   APPLICABLE LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[13] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[14]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[15] The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[16] Rather, "[a] dispute regarding a material fact is

---

[13]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[14]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[15]    Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[16]    *Matsushita*, 475 U.S. at 585-86 [citations omitted]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not

*genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[17]

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."[18] Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants.[19] However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

---

rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[17]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[18]     *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[19]     *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims").  This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

More specifically, where a plaintiff has failed to properly respond[20] to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[21] to the extent that (1) those facts are supported by the evidence in the record,[22] and (2) the non-moving

---

[20]   *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statements of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").  To create a dispute of material fact, it is not sufficient that the non-movant merely challenge the veracity or form of one or more of the movant's supporting affidavits.  *See Chemical Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y. 1979); *Hofmann v. John Hancock Mu. Life. Ins. Co.*, 400 F. Supp. 827, 831, n.5 (D. Md. 1975).

[21]   *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.") [emphasis in original].

[22]   *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of material facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary

party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[23]

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[24] Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that

---

judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[23]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[24]     N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added]; *see, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

memorandum of law, the only remaining issue is whether the legal arguments advanced in the

defendant's memorandum of law are *facially meritorious*.[25]  A defendant's burden in making legal

arguments that are facially meritorious has appropriately been characterized as "modest."[26]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond

to a motion for summary judgment, a district court has no duty to perform an independent review

of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[27]

---

[25]     *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8
(N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under
Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially
meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*,
04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe,
M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2
(N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS
26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist.
LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S.
Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S.
Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[26]     *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22,
2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for
summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324
(1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y.
Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-
CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting
Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F.
Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted
defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed
motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist.
LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule
7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to
dismiss *and* the reasons set forth in defendants' motion papers*)*, *adopted by* 1997 U.S. Dist.
LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent
Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd,
M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[27]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We
agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a

This is because even *pro se* plaintiffs must obey the Court's procedural rules.[28]  However, in the

event the district court chooses to conduct such an independent review of the record, any verified

complaint filed by the plaintiff should be treated as an affidavit.[29]  (Here, I note that Plaintiffs'

Amended Complaint is verified pursuant to 28 U.S.C. § 1746.[30])  That having been said, to be

sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or

verified complaint) must, among other things, be based "on personal knowledge."[31]  An affidavit

---

district court to perform an independent review of the record to find proof of a factual dispute.")
[citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.
Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10,
2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006
U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for
summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003)
(Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d
369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[28]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the
pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we
have never suggested that procedural rules in ordinary civil litigation should be interpreted so as
to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806,
834, n. 46 (1975) ("The right of self-representation is not a license . . .  not to comply with
relevant rules of procedural and substantive law."); *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995)
("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally
are required to inform themselves regarding procedural rules and to comply with them.")
[citations omitted].

[29]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified
complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[30]     (Dkt. No. 29, at 11 [Plf.'s Am. Compl.].)

[31]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private*

(or verified complaint) is not based on personal knowledge if, for example, it is based on mere

"information and belief" or hearsay.[32]  In addition, such an affidavit (or verified complaint) must

not be conclusory.[33]  An affidavit is conclusory if, for example, its assertions lack any supporting

evidence or are too general.[34]  Finally, even where an affidavit (or verified complaint) is

_____

*Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[32]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[33]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[34]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]

nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely

unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and

improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to

credit the allegations made in the complaint."[35]

### B.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is

based entirely on the plaintiff's complaint,[36] such a motion is functionally the same as a motion

---

with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

[35]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit Local Rule § 0.23).

[36]     (*See, e.g.*, Dkt. No. 55, at 5-6 [Defs.' Mem. of Law, arguing that Plaintiff's
Amended Complaint has failed to state a claim of conspiracy to violate his Eighth Amendment

14

to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[37]  For these reasons, it is appropriate to briefly summarize the recently clarified legal standard governing Fed. R. Civ. P. 12(b)(6) motions to dismiss.

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a

---

rights because it fails to allege facts plausibly suggesting that any Defendant conspired with a private party].)

[37]    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[38] or (2) a challenge to the legal cognizability of the claim.[39]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

---

[38]       *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[39]       *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

rests."[40]  The purpose of this rule is to "facilitate a proper decision on the merits."[41]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[42]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[43]  However, it is well established that even this liberal notice pleading standard "has its limits."[44]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[45]

---

[40]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[41]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[42]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[43]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[44]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[45]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim

upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[46]  Rather than turning

on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the

"plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a

plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to

relief above the speculative level [to a plausible level]" assuming, of course, that all the

allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a

_____

S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings,*
*Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-
209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the
Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g., Salvador v. Adirondack Park*
*Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)
(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule
8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the
U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued
precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[46]      The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival." *Twombly*, 127 S. Ct. at 1969.

practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

Of course, the Second Circuit has repeatedly recognized the controlling nature of the clarified plausibility standard that was articulated by the Supreme Court in *Twombly*. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original]; *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("We affirm the district court's dismissal of the conspiracy claims because plaintiffs are unable to allege facts that would provide 'plausible grounds to infer an agreement' [under *Bell Atlantic v. Twombly*]"); *cf. Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) ("*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted].[47]

---

[47]    I note that Fed. R. Civ. P. 8's plausibly standard, explained in *Twombly*, was in no way diminished by the Supreme Court's subsequent decision in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007).  In *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Twombly*, all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id.* at 2200.  While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point

Having said all of that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[48] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[49] In other words, while all pleadings are to be construed liberally under Fed. R. Civ. P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.[50] For example, the mandate to read the papers of *pro se* litigants generously makes

---

that is perhaps so obvious that it did not deserve mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id*. at 2199-2200. The decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not also allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id*. This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[48]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[49]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[50]     *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers . . . .") [internal quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally,

it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[51]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[52]  Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[53]  (Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive"

---

particularly when they allege civil rights violations.") [citation omitted].

[51]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[52]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[53]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

such that "[b]etter pleading will not cure it."[54]  In addition, granting a *pro se* plaintiff an

opportunity to amend is not required where the plaintiff has already been given a chance to

amend his pleading.[55])

However, while this special leniency may somewhat loosen the procedural rules

governing the form of pleadings,[56] it does not completely relieve a *pro se* plaintiff of the duty to

satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[57]  Rather, as both the

---

[54]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[55]     *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[56]     *See Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of pro se litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[57]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within

Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.

R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[58]

Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended."[59]

---

the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[58]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[59]    *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

III.     **ANALYSIS**

A.     **Whether Plaintiff Has Failed to State a Claim of Conspiracy to Violate His Eighth Amendment Rights**

As stated above in Part I.B. of this Report-Recommendation, Defendants argue that Plaintiff has failed to state a claim of conspiracy to violate his Eighth Amendment rights because he has failed to allege facts plausibly suggesting that any Defendant conspired with a private or "external" party (which, they argue, is a requirement of stating a conspiracy claim). (Dkt. No. 55, at 5-6 [Defs.' Memo. of Law].) In response, Plaintiff argues that the external-party requirement applies only when the actions complained of were committed by Defendants in their official capacities, and here Plaintiff sues Defendants also in their individual capacities. (Dkt. No. 67, Part 2, at 4-6 [Plf.'s Memo. of Law].)

My analysis starts with Plaintiff's reference to the fact that he sues Defendants, in part, in their official capacities. (*Id*. at 5.) As stated above in Part I.A. of this Report-Recommendation, Plaintiff does in fact sue Defendants, in part, in their official capacities. (Dkt. No. 1, ¶ 9 [Plf.'s Am. Compl.].) Moreover, Plaintiff's Amended Complaint seeks only money damages, and no injunctive relief, from Defendants. (*Id*. at ¶¶ 55-56.) As a result, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment, under the fundamental principle of "sovereign immunity."[60] Where it has been successfully demonstrated

---

[60]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an

24

that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) [citation omitted]; *see also* Fed. R. Civ. P. 12(h)(3).  Moreover, as explained above in Part II.B. of this Report-Recommendation, the Court possesses the authority under 28 U.S.C. §§ 1915(e)(2)(B)(ii), and 1915A(b), to *sua sponte* review the pleading sufficiency of Plaintiff's claims.  For these reasons, I recommend that the Court *sua sponte* dismiss Plaintiff's claims against Defendants in their official capacities.

All that is left, then, in this action are Plaintiff's claims against Defendants in their individual capacities.  Returning to Plaintiff's argument that the external-party requirement (on which Defendants' conspiracy argument hinges) applies only when the actions complained of were committed by Defendants in their official capacities, Plaintiff's brief argument essentially has four parts: (1) the external-party requirement is a manifestation of what is known as the "intracorporate conspiracy" doctrine (or the "intraenterprise conspiracy" doctrine, or the "intra-agency conspiracy" doctrine), which provides that officers, agents or employees of a single

---

employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *5 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) ("Since the only relief sought herein is compensatory and punitive monetary relief, Plaintiff's claims against all Defendants in their official capacities should be dismissed.").

25

corporate entity are legally incapable of conspiring together; (2) the intracorporate conspiracy

doctrine applies in cases where the "corporate" entity is a *government* entity; (3) the

intracorporate conspiracy doctrine contains an exception (called the "scope of employment"

exception) for cases when individuals pursue personal interests wholly separate and apart from

the entity; and (4) here, Plaintiff alleges that Defendants were pursuing personal interests wholly

separate and apart from DOCS, in part because he has sued them in their individual capacities,

and in part because he has *not* alleged that they were acting pursuant to some sort of DOCS

policy.  (Dkt. No. 67, Part 2, at 5-6 [Plf.'s Memo. of Law].)

After carefully reviewing the two cases cited by Plaintiff in support of his argument (and

the cases that they cite and their progeny),[61] I agree with Plaintiff although for reasons other than

those that he offers.

Because I have found seven district court cases from within this Circuit in which the

intracorporate conspiracy doctrine has been applied with regard to conspiracy claims against the

State and only one district court case in which it has not been so applied, I will assume for the

sake of argument that the intracorporate conspiracy doctrine does in fact apply to cases in which

the entity is the State.  *See Farid v. Bouey*, 554 F. Supp.2d 301, 324 (N.D.N.Y. 2008) (Sharpe,

J.); *Lewis v. Goord*, 06-CV-0504, 2008 WL 902179, at *4 (N.D.N.Y. March 31, 2008) (Scullin,

J., adopting, on *de novo* review, report-recommendation by Treece, M.J.); *Ozuno v. Vadlamudi*,

03-CV-0475, 2006 WL 1977618, at *10, n.7 (N.D.N.Y. July 11, 2006) (Sharpe, J., adopting, on

*de novo* review, report-recommendation by Peebles, M.J.); *Colon v. Sawyer*, 03-CV-1018, 2006

---

[61]       *See Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir. 1976); *Orafan v. Goord*, 411 F. Supp.2d 153 (N.D.N.Y. 2006) (Magnuson, J.), *vacated and remanded on other grounds sub nom.*, *Orafan v. Rashid*, No. 06-2951, 249 F. App'x 217 (2d Cir. Sept. 28, 2007).

WL 721763, at *6, n. 8 (N.D.N.Y. March 20, 2006) (Kahn, J.); *Orafan v. Goord*, 411 F. Supp.2d

162, 164-65 (N.D.N.Y. 2006) (Magnuson, V.J.); *Scott v. Goord*, 01-CV-0847, 2004 WL

2403853, at *13 (S.D.N.Y. Oct. 27, 2004); *Cates v. State of Conn. DOCS*, 98-CV-2232, 2000

WL 502622, at *8 (D. Conn. Apr. 13, 2000); *but see Fox v. Brown*, 05-CV-1292, 2007 WL

586724, at *12 (N.D.N.Y. Feb. 21, 2007) (Kahn, J., adopting, on *de novo* review, report-

recommendation of Di Bianco, M.J.).

Even assuming that the doctrine applies to Plaintiff's conspiracy claims, his claims

(liberally construed) appear to fall within the "scope of employment" exception to that doctrine.

As Plaintiff correctly argues, this exception exists "when individuals pursue personal interests

wholly separate and apart from the entity." *Orafan v. Goord*, 411 F. Supp.2d 153, 165

(N.D.N.Y. 2006) (Magnuson, J.) [internal quotation marks and citations omitted], *vacated and

remanded on other grounds sub nom.*, *Orafan v. Rashid*, No. 06-2951, 249 F. App'x 217 (2d Cir.

Sept. 28, 2007).

I note that, in order to allege that individuals were pursuing personal interests wholly

separate and apart from the entity, more is required of a plaintiff than simply suing the

individuals in their individual or personal capacities.[62]   This is, no doubt, because an individual

or "personal" capacity claim is merely an effort to obtain monetary recovery payable out of the

---

[62]     *See Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976) ("Simply
joining corporate officers as defendants in their individual capacities is not enough to make them
persons separate from the corporation in legal contemplation.  The plaintiff must also allege (and
prove) that they acted other than in the normal course of their corporate duties. . . .") [internal
quotation marks omitted] [citing *Cole v. Univ. of Hartford*, 391 F. Supp. 888, 893 (D. Conn.
1975)].

responsible official's personal finances.[63]  Moreover, in order for liability to be imposed against a

defendant in an individual capacity suit, "it is enough to show that the official, acting under color

of state law, caused the deprivation of a federal right."[64]

I note also that, in order to allege that individuals were pursuing personal interests wholly

separate and apart from the entity, more is required of a plaintiff than simply alleging that the

defendants were motivated by personal bias against the plaintiff.  *See Peters v. City of New York*,

04-CV-9333, 2005 WL 387141, at *3 (S.D.N.Y. Feb. 16, 2005) ("[P]ersonal bias is not the sort

of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine where,

as here, the action complained of arguably served a legitimate interest of [the employer].")

[internal quotation marks and citation omitted], *accord*, *Johnson v. City of New York*, 01-CV-

1860, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004).

Here, on the one hand, Plaintiff alleges that Defendants were DOCS employees at the

time they violated his constitutional rights, and that they were acting "under the color of State

law." (Dkt. No. 1, ¶¶ 5-8, 9 [Plf.'s Am. Compl.].)  Moreover, he alleges facts plausibly

suggesting that what caused the use of force against him was (1) the fact that he was standing

alone in the hallway of the administrative offices in a maximum-security correctional facility, (2)

when a correctional officer asked him his name and department identification number, Plaintiff

called the man an "asshole," and (3) when two correctional officers started to take Plaintiff by

force to a sergeant's office, Plaintiff initially resisted.  (*Id.* at ¶¶ 20-23, 25, 27-29.)

On the other hand, Plaintiff also alleges facts plausibly suggesting that, when Defendants

---

[63]     *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[64]     *Hafer*, 502 U.S. at 25 [emphasis in original, and citation omitted].

conspired to assault him, they were conscious that "the tax payers [would] pay any awards for [Defendants'] violation of [their victim's] constitutional rights."  (*Id*. at ¶¶ 53-54.)  In addition, he alleges that Defendants Sprague, Boyea and Michael were motivated by a "sadistic" desire to cause Plaintiff pain.  (*Id*. at ¶¶ 47-50.)  Finally, he alleges that, during the assault, Defendant Michael "appeared to look out for possible witness[es] walking the corridor," and Defendants Michael and Boyea continued to use force against Plaintiff even when Plaintiff was in mechanical restraints and was no longer resisting.  (*Id*. at ¶¶ 33-39.)  In other words, Plaintiff alleges facts plausibly suggesting that Defendants Sprague, Boyea and Michael were not acting, and knew they were not acting, in the interest of DOCS but were acting in their own interests.

Under the circumstances, I find that Plaintiff has alleged facts plausibly suggesting that Defendants Sprague, Boyea and Michael were pursuing personal interests wholly separate and apart from those of DOCS and the State of New York.  *See Hill v. City of New York*, 03-CV-1283, 2005 WL 3591719, at *6 (S.D.N.Y. Dec. 30, 2005) ("Here, plaintiff clearly alleges that defendant Barrett acted in his own personal interest, not in the interest of the police department or the city, by conspiring with others to cover-up his alleged use of excessive force.  Given that plaintiff has alleged that Barrett conspired based on a personal stake, the intracorporate conspiracy doctrine is inapplicable to the instant case.").

I note that, in *Orafan v. Goord*, Visiting Judge Magnuson, of this Court, found that the referenced exception to the intracorporate conspiracy doctrine did *not* apply because "Plaintiffs have made no allegation that Defendants were acting beyond the scope of their employment.  In fact, Plaintiffs specifically allege that Defendants acted through DOCS' policies, customs, and practices . . . ."  *Orafan*, 411 F. Supp.2d at 165 [citation omitted].  Those are not the factual

allegations in this case.  (*See* Dkt. No. 29 [Plf.'s Am. Compl.].)  Moreover, in *Orafan*, the

plaintiff was (in part) suing the defendants in their official capacities for declaratory and

injunctive relief.  *Id*. at 156-57.[65]  In this case, Plaintiff is not so suing Defendants (since, as I

have pointed out above, Plaintiff's official-capacity claim must be dismissed).

Before concluding my analysis in this section, two points bear mentioning.  First, this

Court possesses the authority (and, indeed, the duty) to review the pleading sufficiency of

Plaintiff's conspiracy claim *sua sponte*.  To allege such a claim, Plaintiff must allege, *inter alia*,

facts plausibly suggesting "a meeting of the minds, such that defendants entered into an

agreement, express or tacit, to achieve the unlawful end."  *See Webb v. Goord*, 340 F.3d 105, 110

(2d. Cir. 2003).  Here, given Plaintiff's special status as a *pro se* civil rights litigant, I find, based

on a *sua sponte* review of Plaintiff's conspiracy claim, that he has *just barely* alleged such facts,

given his factual allegations of (1) how Defendants repeatedly started harassing him after he filed

the contempt motion to which he refers in his Amended Complaint, (2) how they expressly tied

their harassment to his filing of the contempt motion, (3) how Defendants told him (before the

assault in question) about "continu[ing] to do as they please[]," and (4) the coordinated manner in

which the assault was carried out.  (Dkt. No. 29, ¶¶ 14-40, 53 [Plf.'s Am. Compl.].)

Second, having said that, I express no opinion as to whether or not Plaintiff would be able

to establish, at trial or on a second motion for summary judgment, his conspiracy claim through

evidence, since that issue has not been raised in Defendants' motion.  This is because the record

appears devoid of any evidence that Defendants had actually entered into an agreement, express

---

[65]     *See also Orafan v. Goord*, 95-CV-0318, Order, at 3 (N.D.N.Y. filed Nov. 17,
2003) (Magnuson, J.) (clarifying that "Plaintiff's claims for declaratory and injunctive relief
against Defendants Goord, Portuondo, Bennett, Duncan and Donnelly . . . [are] reinstate[d]").

or tacit, to assault Plaintiff on December 5, 2003.  For example, Plaintiff's assertions, in his

verified Amended Complaint, that there was a conspiracy against him based "[u]pon information

and belief" do not constitute evidence sufficient to oppose a motion for summary judgment since

those assertions are not based on personal knowledge.  (Dkt. No. 29, ¶¶ 19, 24 & Verification

[Plf.'s Am. Compl.].)  *See also*, *supra*, note 32 of this Report-Recommendation.

For these reasons, I recommend that Defendants' motion for partial summary judgment be

denied to the extent it requests dismissal of Plaintiff's conspiracy claim for failure to state a claim

upon which relief might be granted.

### B.      Whether Plaintiff Has Failed to Establish a Claim for Retaliation Under the First Amendment

Claims of retaliation like those asserted by Plaintiff find their roots in the First

Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such

claims is the notion that in a prison setting, corrections officials may not take actions which

would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389

F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted,

however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v.*

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> This is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.  Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually
> any adverse action taken against a prisoner by a prison official--even
> those otherwise not rising to the level of a constitutional violation--can
> be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

As stated above in Part I.B. of this Report-Recommendation, Defendants argue that Plaintiff has failed to establish a claim for retaliation under the First Amendment because he has failed to adduce evidence that Defendants took adverse action against him because Plaintiff had engaged in constitutionally protected activity.  (Dkt. No. 55, at 6-8 [Defs.' Memo. of Law].) Simply stated, their argument concerns the third element of the above-stated three-part test.[66]  In

---

[66]     I note that Defendants also briefly challenge the second element of the above-stated three-part test when they argue (in passing) that Plaintiff has failed to adduce record evidence establishing that the "verbal harassment" to which he was subjected (at some point between October 21, 2003, and December 5, 2003) was anything more than *de minimis*.  (Dkt. No. 55, at 9 [Page "7" of Defs.' Memo. of Law].)  However, I do not even liberally construe Plaintiff's Amended Complaint as alleging facts plausibly suggesting that the adverse action taken by Defendants against Plaintiff included this vaguely identified "verbal harassment."  (Dkt. No. 29, ¶¶ 52-54 [Plf.'s Am. Compl.].)  Rather, I liberally construe Plaintiff's Amended Complaint as alleging facts plausibly suggesting that this adverse action consisted solely of the

support of this argument, they have asserted various facts in the fourteen paragraphs of their Rule 7.1 Statement, and have supported each of those factual assertions with accurate citations to record evidence.[67]

In his response to Defendants' motion, Plaintiff offers a Rule 7.1 Response.  (Dkt. No. 67, Part 1, at 1-4 [Plf.'s Rule 7.1 Response].)  In that Response, Plaintiff admits five of the fourteen factual assertions of Defendants' Rule 7.1 Statement.  (*Id*. at ¶¶ 3-4, 8, 10-11.)  Furthermore, he partially admits three of the fourteen factual assertions of Defendants' Rule 7.1 Statement.  (*Id*. at ¶¶ 5-6, 9.)  With regard to the nine factual assertions that Plaintiff attempts to dispute or partially dispute, generally his response is deficient in one or more of four ways (which deficiencies are explained generally, above in Part I.B. of this Report-Recommendation): (1) it fails to deny *each* of the factual assertions contained in Defendants' Rule 7.1 Statement; (2) it fails to support denials with specific citations to the record where the factual issue arises; (3) it is argumentative and non-responsive in nature, and attempts to create factual disputes that are *immaterial* in

---

alleged assault on December 5, 2003.  (*Id*.)  Plaintiff asserts allegations of the referenced "verbal harassment" only to show that Defendants *knew* (before December 5, 2003) that Plaintiff had participated in *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.).  This reading of Plaintiff's Amended Complaint is confirmed by Paragraph 13 of his Rule 7.1 Response.  (Dkt. No. 67, Part 1, ¶ 13 [Plf.'s Rule 7.1 Response, asserting, "The plaintiff did not note the date of such harassment as it occurred frequently (a part of being in prison) and it is not a focal point of the claims.  It is only given for historic purposes and its cumulative effect."].)  Finally, even if Plaintiff's Amended Complaint were construed as including a claim that Defendants retaliated against Plaintiff by subjecting him to the referenced "verbal harassment" (and the unnecessary "frisk" searches referenced in Paragraph 53 of his Amended Complaint), I would agree with Defendants that Plaintiff has failed to adduce record evidence establishing that those particular actions were anything more than *de minimis*.  I would also find that Plaintiff has failed to adduce record evidence establishing a *causal link* between his participation in *Clarkson v. Coughlin* and that adverse action, for the reasons stated below.

[67]       (Dkt. No. 54, Part 8, ¶¶ 1-14 [Defs.' Rule 7.1 Statement, providing accurate record citations].)

nature; and/or (4) it merely criticizes the form or veracity of Defendants' affidavit testimony rather than citing any admissible record evidence contradicting that testimony.  (*Id*.)[68]

These failures need not be overlooked simply out of special solicitude to Plaintiff due to his special status as a *pro se* civil rights litigant.[69]  (As both the Supreme Court and Second Circuit have repeatedly recognized, even *pro se* plaintiffs must obey the Court's procedural rules.)[70]  Nor *should* these failures be overlooked under the circumstances, since (1) Plaintiff was specifically advised of the potential consequences of failing to respond to Defendants' motion for partial summary judgment,[71] and (2) he clearly understood those consequences since he *twice* requested (and was granted) an extension of the deadline by which to respond to Defendants' motion.[72]  Under the circumstances, I decline, and I recommend that the Court decline, to *sua*

---

[68]     This is not surprising since, in his Memorandum of Law, Plaintiff indicates that he is "conced[ing]" Defendants' factual assertions (except for their assertion that they did not know of Plaintiff's litigation activity before December 5, 2003).  (Dkt. No. 67, Part 2, at 2-3 [Pages "1" to "3" of Plf.'s Memo. of Law].)

[69]     For example, this Court has rather consistently enforced Local Rule 7.1(a)(3) (and its predecessor, Local Rule 7.1[f]), by deeming facts set forth in a moving party's statement to have been admitted where the party opposing party has failed to properly respond to that Statement–even where the opposing party was proceeding *pro se* in a civil rights case.  *See, e.g.*, *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.) (*pro se* civil rights case); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1, n.1 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.) (*pro se* civil rights case); Squair v. O'Brien & Gere Eng'rs, Inc., 96-CV-1812, 1998 WL 566773, at *1, n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.) (*pro se* civil rights case); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1[a][3], in *pro se* civil rights case).

[70]     *See*, *supra*, note 28 of this Report-Recommendation.

[71]     (Dkt. No. 54, Part 1 [Defs.' Notice of Motion].)

[72]     (Dkt. No. 56, 60 [Orders extending Plaintiff's time to respond to Defs.' Motion].)

*sponte* search the record for proof of a dispute of material fact with regard to Plaintiff's retaliation claim.[73]

The net effect of Plaintiff's admissions and *ineffective* denials in his Rule 7.1 Response is that, pursuant to the Local Rules of Practice for this Court, the following seven factual assertions must be deemed to be true for purposes of Defendants' motion:

(1) The contempt motion to which Plaintiff refers in his Amended Complaint was filed on October 21, 2003, in the class action of *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.);[74]

(2) Before the incident in question on December 5, 2003, no Defendant in this action had any specific knowledge that Plaintiff had filed a contempt motion in, or had otherwise participated in, *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.), or the related proceeding of *Medina v. NYS DOCS*, 03-CV-9249 (S.D.N.Y.);[75]

---

[73]      *See*, *supra*, note 27 of this Report-Recommendation.

[74]      (*Compare* Dkt. No. 54, Part 8, ¶ 11 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶ 11 [Plf.'s Rule 7.1 Response, admitting asserted facts].)  *See also Clarkson v. Coughlin*, 91-CV-1792, Plf.'s "Reply Memorandum" (S.D.N.Y. filed Oct. 21, 2003) (civil rights class action).

[75]      (*Compare* Dkt. No. 54, Part 8, ¶ 12 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶ 12 [Plf.'s Rule 7.1 Response, failing to cite any admissible record evidence establishing referenced knowledge by Defendants, and citing only unspecified allegation of such knowledge contained in Plaintiff's Amended Complaint].)  To the extent that Plaintiff is attempting to cite the allegation contained in Paragraph 19 of his Amended Complaint, that allegation (though sworn) does not constitute evidence sufficient to create a dispute of fact, since the allegation was based only on Plaintiff's "information and belief," not on his personal knowledge.  (Dkt. No. 29, ¶ 19 & Verification [Plf.'s Am. Compl.].)  *See also*, *supra*, note 32 of this Report-Recommendation.  To the extent that Plaintiff is attempting to cite the allegation contained in Paragraphs 52 and 53 of his Amended Complaint, that allegation (though sworn) does not constitute evidence sufficient to create a dispute of fact, since the allegation is so vague as to be entirely conclusory.  (Dkt. No. 29, ¶¶ 52-53 [Plf.'s Am. Compl.].)  *See also*, *supra*, notes 33-34 of this Report-Recommendation.  In particular, the allegation is vague as to when the alleged harassment occurred and who committed the harassment.  (*Id.*)  In

(3) Plaintiff alleges that, between some point before the date on which he filed his

contempt motion (i.e., October 21, 2003), and the date on which the alleged assault occurred (i.e.,

December 5, 2003), "unnamed officers and named [D]efendants would harass Plaintiff," but

Plaintiff has adduced no evidence of precisely when such harassment occurred, or that any

*Defendant* committed any such harassment *because* of (or even with knowledge of) Plaintiff's

participation in the lawsuit of *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.);[76]

---

any event, even if the allegation were deemed to be sufficiently specific, the allegation actually
asserts that the offending correctional officers told Plaintiff that they would "continue to do as
they pleased" regardless of whether or not he won his lawsuit, indicating there was no causal
connection between Plaintiff's protected activity and the adverse actions. (*Id.* at ¶ 53.) Finally, it
should be noted that the record evidence to which Plaintiff cites in his Opposition Memorandum
of Law–i.e., Exhibit C to his Opposition Affidavit–does not create a dispute of material fact on
the issue of whether Defendants knew about Plaintiff's litigation activity before December 5,
2003. (*See* Dkt. No. 67, Part 1, at 27-29 [Ex. C to Plf.'s Opp. Affid., attaching misbehavior
reports issued to Plaintiff on Nov. 19, 2003, by "C. La Croix," and on Dec. 2, 2003, by "R.
Bardin"].)

[76]       (*Compare* Dkt. No. 54, Part 8, ¶¶ 13-14 [Defs.' Rule 7.1 Statement, providing
accurate record citations] *with* Dkt. No. 67, Part 1, ¶¶ 13-14 [Plf.'s Rule 7.1 Response, failing to
specifically deny each of the facts asserted in these two paragraphs and, in any event, citing only
pages 24 and 25 of his deposition transcript in support of his implicit denial of certain of those
facts].)  Pages 24 and 25 of Plaintiff's deposition transcript do *not* constitute evidence that, before
December 5, 2003, Defendants harassed Plaintiff *because* he had participated in the lawsuit of
*Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.).  Rather, those pages contain, in pertinent part,
the following testimony: "When I started [filing] the grievance and the lawyers started coming
and taking the deposition [Defendants and other officers from the law library] started harassing
me. . . .  I was coming back from the law library . . . [and] then they would take me off the line
[and] search me, and [the *other* correctional officers] would always say stuff sarcastic to me
[about prisoner lawsuits]."  (Dkt. No. 54, Part 5, at 24-25 [Ex. A to Roth Affid., attaching pages
24 and 25 of Plf.'s Depo. Trans.] [emphasis added].)  I will assume that by "grievance," Plaintiff
meant to say "contempt motion."  In any event, again, there is no record evidence that any
Defendant in this action *knew* of Plaintiff's participation in *Clarkson v. Coughlin*, at any time
before December 5, 2003.  I note that it *appears* unlikely that the deposition to which Plaintiff
refers in fact occurred before December 5, 2003.  That deposition occurred not in *Clarkson v.
Coughlin*, but the related proceeding of *Medina v. NYS DOCS*, 03-CV-9249 (S.D.N.Y.); and that
related proceeding was not even *filed* until November 21, 2003.  *See Clarkson v. Coughlin*, 91-
CV-1792, Order (S.D.N.Y. filed Nov. 17, 2003) (directing that Plaintiff's request for Order of

(4) To the best of Defendant Hunt's recollection, the reason he escorted Plaintiff from his cell to the facility "courthouse" on December 5, 2003, was that he had been ordered to do so by non-party Hearing Lieutenant DiBiase so that Plaintiff could attend a scheduled disciplinary hearing;[77]

(5) The reason Defendant Hunt left Plaintiff's side at the door to the facility courthouse was that the doors to the courthouse were closed, and Defendant Sprague had entered the area

---

contempt should be granted separate docket number and filed as separate proceeding); *Medina v. NYS DOCS*, 03-CV-9249, Plf.'s Notice of Motion (S.D.N.Y. filed Nov. 21, 2003).  Finally, I note that the two misbehavior reports adduced by Plaintiff as Exhibit C to his Opposition Affidavit also do not constitute evidence that Defendants took adverse action against Plaintiff as a result of his having engaged in protected activity, since those misbehavior reports were issued by correctional officers other than Defendants in this action, and because the reports in no way mention any Defendant in this action.  (*See* Dkt. No. 67, Part 1, at 27-29 [Ex. C to Plf.'s Opp. Affid., attaching misbehavior reports issued to Plaintiff on Nov. 19, 2003, by "C. La Croix," and on Dec. 2, 2003, by "R. Bardin"].)

[77]     (*Compare* Dkt. No. 54, Part 8, ¶ 1 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶ 1 [Plf.'s Rule 7.1 Response, admitting that Defendant Hunt escorted Plaintiff from his cell but merely *challenging the credibility* of Defendant Hunt's sworn statement that, to the best of his recollection, he did so because he had been ordered to do so by Hearing Lieutenant DiBiase so that Plaintiff could attend a disciplinary hearing].)  To create a dispute of material fact, it is not sufficient that the non-movant merely challenge the veracity of the movant's supporting affidavit.  *See Chemical Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y. 1979).  Furthermore, I note that Defendant Hunt's sworn statement is, indeed, supported by Paragraphs 2 through 4 of his Declaration and his Response to Plaintiff's Interrogatory No. 12.  (Dkt. No. 54, Part 7, ¶¶ 2-4 [Hunt Decl.]; Dkt. No. 67, Part 1, at 16 [Ex. A to Plf.'s Opp. Papers, attaching Defendant Hunt's response to Plaintiff's Interrogatory No. 12].)  Finally, I note that the two misbehavior reports adduced by Plaintiff as Exhibit C to his Opposition Affidavit actually bolster Defendant Hunt's sworn assertion that he had been ordered to bring Plaintiff to the facility's "courthouse" so that he could attend a disciplinary hearing on a misbehavior report that he had previously received.  (*See* Dkt. No. 67, Part 1, at 27-29 [Ex. C to Plf.'s Opp. Affid., attaching misbehavior reports issued to Plaintiff on Nov. 19, 2003, by "C. La Croix," and on Dec. 2, 2003, by "R. Bardin"].)

and agreed to watch Plaintiff while Defendant Hunt retrieved the courthouse keys;[78]

(6) The use of force against Plaintiff was precipitated by the fact that, when Defendant Sprague had asked Plaintiff for identification so that he could file a disciplinary charge against him (for failing to face the wall as ordered), Plaintiff had responded by calling Defendant Sprague an "asshole";[79] and

(7) The use of force against Plaintiff escalated when, once Defendants Boyea and Michaels got hold of Plaintiff, Plaintiff grabbed a baton from one of the Defendants, threw it down the corridor, and further resisted Defendants Boyea and Michaels by grabbing onto two steam pipes in order to prevent Defendants Boyea and Michaels from bringing him into a sergeant's office.[80]

---

[78]     (*Compare* Dkt. No. 54, Part 8, ¶ 2 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶ 2 [Plf.'s Rule 7.1 Response, failing to deny any factual assertion contained in this paragraph except whether it was Defendant Hunt's idea that Defendant Sprague watch Plaintiff, or whether that was Defendant Sprague's idea–which fact is not material to Defendants' motion].)  I note that the fact that Defendant Hunt did not leave Plaintiff alone but left Plaintiff with Defendant Sprague is supported by Paragraphs 3 and 4 of Defendant Hunt's declaration, and by an Interdepartmental Report authored by Defendant Hunt. (Dkt. No. 54, Part 7, ¶¶ 3-4 [Hunt Decl.]; Dkt. No. 67, Part 1, at 23-24 [Ex. B to Plf.'s Opp. Papers, attaching Interdepartmental Report from Defendant Hunt to Lt. Gosselin, dated December 5, 2003].)

[79]     (*Compare* Dkt. No. 54, Part 8, ¶¶ 3-4 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶¶ 3-4 [Plf.'s Rule 7.1 Response, admitting asserted facts].)  I note that the very fact that Defendant Sprague had to ask Plaintiff his name is consistent with the fact that Defendant Sprague did not know that Plaintiff had participated in *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.).

[80]     (*Compare* Dkt. No. 54, Part 8, ¶ 6 [Defs.' Rule 7.1 Statement, providing accurate record citations] *with* Dkt. No. 67, Part 1, ¶ 6 [Plf.'s Rule 7.1 Response, admitting the bulk of the facts asserted in this paragraph, and only asserting that he was justified in grabbing the referenced baton–which fact is not material to this portion of Defendants' motion, which regards whether Defendants took the action they did because Plaintiff had participated in *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.) or because of other reasons].)  I note that, in addition to being

38

Based on these undisputed facts, I find that no rational fact-finder could conclude that any Defendant in this action retaliated against Plaintiff by assaulting him on December 3, 2005, *because* he had engaged in protected activity by participating in a federal court proceeding between October 21, 2003, and December 5, 2003.  Rather, the record rather clearly establishes that the *sole* cause of the alleged assault was the events of December 5, 2003, not because of Plaintiff's having participated in a federal court litigation (a fact that Defendants did not even know at the time).

For these reasons, I recommend that Defendants' motion for partial summary judgment be granted to the extent it requests dismissal of Plaintiff's retaliation claim for failure to adduce record evidence establishing the causation element of such a claim.

### C.   Whether Plaintiff Has Failed to Establish that Defendant Hunt was Personally Involved in any of the Constitutional Violations Alleged

As stated above in Part I.B. of this Report-Recommendation, Defendants argue that Plaintiff has failed to establish that Defendant Hunt was personally involved in any of the constitutional violations alleged.  (Dkt. No. 55, at 5-9 [Defs.' Memo. of Law].)  In support of this argument, they have asserted various facts in the fourteen paragraphs of their Rule 7.1 Statement, and have supported each of those factual assertions with accurate citations to record evidence.[81]

---

supported by Paragraph 27 of Plaintiff's verified Complaint, and pages 35 through 39 of Plaintiff's deposition transcript, the referenced fact is supported by the Interdepartmental Reports authored by Defendants Hunt, Sprague, and Michael.  (Dkt. No. 67, Part 1, at 23-26 [Ex. B to Plf.'s Opp. Papers, attaching Interdepartmental Reports from Defendants Hunt, Sprague, and Michael to Lt. Gosselin, dated December 5, 2003].)

[81]   (Dkt. No. 54, Part 8, ¶¶ 1-14 [Defs.' Rule 7.1 Statement, providing accurate record citations].)

In his response to Defendants' motion, Plaintiff offers a Rule 7.1 Response that is generally deficient for the reasons described above in Part II.B. of this Report-Recommendation.  (Dkt. No. 67, Part 1, at 1-4 [Plf.'s Rule 7.1 Response].)  The net effect of Plaintiff's admissions and *ineffective* denials in his Rule 7.1 Response is that, pursuant to the Local Rules of Practice for this Court, the following five factual assertions must be deemed to be true for purposes of Defendants' motion:

(1) Before the incident in question on December 5, 2003, Defendant Hunt had no specific knowledge that Plaintiff had filed a contempt motion in, or had otherwise participated in, *Clarkson v. Coughlin*, 91-CV-1792 (S.D.N.Y.), or the related proceeding of *Medina v. NYS DOCS*, 03-CV-9249 (S.D.N.Y.);[82]

(2) To the best of Defendant Hunt's recollection, the reason he escorted Plaintiff from his cell to the facility "courthouse" on December 5, 2003, was that he had been ordered to do so by non-party Hearing Lieutenant DiBiase so that Plaintiff could attend a scheduled disciplinary hearing;[83]

(3) The reason Defendant Hunt left Plaintiff's side at the door to the facility courthouse was that the doors to the courthouse were closed, and Defendant Sprague had entered the area and agreed to watch Plaintiff while Defendant Hunt retrieved the courthouse keys;[84] and

(4) The use of force against Plaintiff was precipitated by the fact that, when Defendant Sprague had asked Plaintiff for identification so that he could file a disciplinary charge against

---

[82]     *See*, *supra*, note 75 of this Report-Recommendation.

[83]     *See*, *supra*, note 77 of this Report-Recommendation.

[84]     *See*, *supra*, note 78 of this Report-Recommendation.

him (for failing to face the wall as ordered), Plaintiff had responded by calling Defendant

Sprague an "asshole";[85]

(5) The use of force against Plaintiff escalated when, once Defendants Boyea and

Michaels got hold of Plaintiff, Plaintiff grabbed a baton from one of the Defendants, threw it

down the corridor, and further resisted Defendants Boyea and Michaels by grabbing onto two

steam pipes in order to prevent Defendants Boyea and Michaels from bringing him into a

sergeant's office.[86]

In addition, based on the current record, I find that another fact is undisputed for purposes

of Defendants' motion: Defendant Hunt did not conspire with anyone to cause the assault alleged

to have been committed against Plaintiff on December 5, 2003.[87]

Based on these undisputed facts, I find that no rational fact-finder could conclude that

Defendant Hunt was personally involved in any conspiracy to violate Plaintiff's Eighth

Amendment rights by causing him to be assaulted on December 5, 2003.  Similarly, I find that no

rational fact-finder could conclude that Defendant Hunt was personally involved in any

retaliation to which Plaintiff was subjected through the assault alleged to have been committed

---

[85]        *See*, *supra*, note 79 of this Report-Recommendation.

[86]        *See*, *supra*, note 80 of this Report-Recommendation.

[87]        (*Compare* Dkt. No. 65, Part 7, ¶ 4 [Hunt Decl., swearing that "I did not . . .
conspire with anyone to escort plaintiff [to the facility courthouse] for the purpose of subjecting
him to force of any kind"] *with* Dkt. No. 29, ¶ 19 [Plf.'s Am. Compl., alleging that Defendant
Hunt conspired with the other Defendants to cause the alleged assault based "[u]pon information
and belief"].)  A sworn allegation does not constitute evidence sufficient to create a dispute of
fact, where (as here) that sworn allegation is based upon only the declarant's "information and
belief," not on his personal knowledge.  *See also*, *supra*, note 32 of this Report-
Recommendation.

against him on December 5, 2003, in response to his having engaged in protected activity by participating in a federal court proceeding between October 21, 2003, and December 5, 2003. (Indeed, I have already found, in Part II.B. of this Report-Recommendation, that no record evidence exists from which a rational fact-finder could conclude that there occurred retaliation in which *any* Defendant could have been personally involved.)

With regard to the remaining issue of whether Defendant Hunt was personally involved in the alleged use of excessive force against Plaintiff on December 5, 2003, that issue is more complicated.  In their Rule 7.1 Statement, Defendants assert that, in his deposition, Plaintiff testified that Defendant Hunt was not present during the alleged assault.[88]  This assertion is accurate.[89]  Indeed, Plaintiff made this sworn assertion not only in his deposition, but in his sworn Amended Complaint.[90]  However, as Plaintiff correctly points out in his Rule 7.1 Response, the record also contains several pieces of evidence supporting a finding that, at some point after Plaintiff called Defendant Sprague an "asshole," Defendant Hunt in fact returned to the scene, where the following events took place: (1) Defendant Michaels (a correctional sergeant) directed Defendants Hunt and Sprague to escort Plaintiff into a sergeant's office, (2) Plaintiff resisted by taking hold of steam pipers in the corridor, (3) Defendants Hunt and Sprague

---

[88]     (Dkt. No. 54, Part 8, ¶ 6 [Defs.' Rule 7.1 Statement, citing page 36 of Plaintiff's deposition transcript].)

[89]     Specifically, in his deposition, Plaintiff testified as follows: "There was [sic] only three officers involved [in the assault on December 5, 2003].  [Defendant] Hunt is trying to say he was involved in this.  He wasn't there at all.  Once he placed me against the wall, he left.  That was the only of his involvement in this [sic].  It was Sprague, [Boyea] and . . . Michael.  Those are the only three involved in the incident."  (Dkt. No. 54, Part 5, at 33 [Ex. A to Roth Affid., attaching page 33 of Plaintiff's deposition transcript.)

[90]     (Dkt. No. 29, ¶¶ 17, 20, 46 [Plf.'s Am. Compl.].)

42

worked together to remove Plaintiff's hold of the steam pipes and bring Plaintiff down to the

floor, (4) Defendant Hunt grabbed Plaintiff's right arm, which Plaintiff had used to gain control

of Defendant Hunt's baton, and (5) Defendant Hunt secured Plaintiff's arm behind his back so

that hand restrains could be applied.[91]

Even if true, these events alone would not appear to me to constitute excessive force by

Defendant Hunt.  However, Plaintiff also alleges (and adduces sworn testimony) that (1) when

his grasp of the steam pipes was being pulled loose, he was punched in the body and head, (2)

while he was handcuffed and lying face down on the floor, he was repeatedly kicked in the

forehead and face by correctional officers (whom he identifies as Defendants Boyea and

Michael), and (3) after he was lifted to his feet and placed against the wall, an officer (whom he

identifies as Defendant Boyea) started slamming Plaintiff's head into a wall.  (Dkt. No. 29, ¶¶ 29,

33-39 [Plf.'s Am. Compl.].)

Given the genuine issue of material fact that exists regarding whether Defendant Hunt

was one of the three correctional officers who used force against Plaintiff on December 5, 2003, I

find that a genuine issue of material fact also exists regarding whether Defendant Hunt was one

of the officers who used the sort of force described in the preceding paragraph.  Having said that,

I express no opinion as to whether or not Defendant Hunt would be protected from liability at

---

[91]     (Dkt. No. 67, Part 1, at 15-17 [Ex. A to Plf.'s Opp. Papers, attaching Defendant
Hunt's response to Plaintiff's Interrogatory Nos. 11 and 17]; Dkt. No. 67, Part 1, at 22 [Ex. B to
Plf.'s Opp. Papers, attaching Misbehavior Report against Plaintiff authored by Def. Sprague,
dated Dec. 5, 2003]; Dkt. No. 67, Part 1, at 23-26 [Ex. B to Plf.'s Opp. Papers, attaching
Interdepartmental Reports from Defendants Hunt, Sprague, and Michael to Lt. Gosselin, dated
December 5, 2003].)  I note that conspicuously missing from Defendant Hunt's affidavit is any
sworn assertion that he was not, in fact, present during the use of force against Plaintiff on
December 5, 2003, or that he did not use any force at all against him at that time.  (*See generally*
Dkt. No. 54, Part 7 [Hunt Decl.].)

trial or on a second motion for summary judgment (for example, by the doctrine of qualified immunity), especially given the apparent fact that (1) Defendant Hunt was not present at the scene when the events occurred (or did not occur) giving rise to the use of force against Plaintiff, (2) Defendant Hunt was complying with a direct order of a superior officer (namely, Defendant Michaels, a correctional sergeant) to bring Plaintiff into an office, (3) Defendant Hunt fell to the floor with Plaintiff as Plaintiff resisted Defendant Hunt's efforts to bring him into the office, and (4) Plaintiff grabbed Defendant Hunt's baton during the struggle between Plaintiff and Defendant Hunt.

For these reasons, I recommend that Defendants' motion for partial summary judgment be granted to the extent it requests dismissal of Plaintiff's conspiracy claim against Defendant Hunt due to the lack of record evidence establishing his personal involvement in the alleged conspiracy against Plaintiff.  I also recommend that Defendants' motion for partial summary judgment be granted to the extent it requests dismissal of Plaintiff's retaliation claim against Defendant Hunt due to the lack of record evidence establishing his personal involvement in the alleged retaliation against Plaintiff.  However, I recommend that Defendants' motion for partial summary judgment be denied to the extent it requests dismissal of Plaintiff's excessive force claim against Defendant Hunt due to the (purported) lack of record evidence establishing his personal involvement in the alleged use of excessive force against Plaintiff.

    **D.**    **Denial of Any Request by Plaintiff, During any Appeal from this Report-Recommendation, to Supplement the Record on Defendants' Motion**

In the event that, during any objections to this Report-Recommendation, Plaintiff attempts to supplement the record on Defendants' motion for partial summary Judgment, I

respectfully recommend that the Court, in exercising its discretion on the matter, decline to permit him to do so.

The Second Circuit recognizes that the decision of whether or not to accept such evidence rests in the sound discretion of the district court.  *See*, *e.g.*, *Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("[W]e have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J.) [citations omitted].  In deciding whether or not a district court has abused that discretion in denying the supplementation of the record on appeal, the Second Circuit considers factors such as efficiency and fairness.  *See Hynes v. Squillance*, 143 F.3d at 565 ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration . . . .").

With regard to the efficiency consideration, I find that permitting Plaintiff (on appeal) to adduce evidence that was not presented before me would be an inefficient use of judicial resources, and indeed would frustrate the purpose of the Magistrates Act."  *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

With regard to the fairness consideration, I note that the Fifth Circuit has suggested four factors that a court might consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has been issued:

(1) the moving party's reasons for not originally submitting the

45

> evidence; (2) the importance of the omitted evidence to the moving
> party's case; (3) whether the evidence was previously available to the
> non-moving party when it responded to the summary judgment
> motion; and (4) the likelihood of unfair prejudice to the non-moving
> party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F,3d 847, 862 (5th Cir. 2003)

[citation omitted].  Generally, these fairness factors are considered by Courts within the Second

Circuit (and outside of the Second Circuit).[92]  Here, of course, I cannot make any finding

regarding the first two fairness factors since Plaintiff has not requested permission to supplement

the record on Defendants' motion for summary judgment.  However, I find that, should he request

that permission, the third and fourth factors would weigh decidedly against granting him that

permission.  Plaintiff has had a full and fair opportunity to be heard on his claims, including a

---

[92]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present
further testimony when it offers no justification for not offering the testimony at the hearing
before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World
Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not
abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff
"offered no justification for not offering the testimony at the hearing before the magistrate");
*Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993)
(declining to consider affidavit of expert witness that was not before magistrate) [citation
omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to
raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,
1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's
recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535
(5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and
recommendations [to raise its procedural default argument] . . . Respondent has waived
procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun.
Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not
entitled as of right to de novo review by the judge of an argument never seasonably raised before
the magistrate.") [citation omitted].

full and fair opportunity to (1) conduct discovery in this matter,[93] and (2) respond with evidence and argument to Defendants' motion for partial summary judgment.[94]  Defendants are entitled to have their motion decided on a level playing field, based on evidence and arguments to which they could properly *reply* (and possibly refute with further record evidence), under the Federal Rules of Civil Procedure and Local Rules of Practice.[95]

For these reasons, I recommend that the Court, in exercising its discretion on the issue, deny any request by Plaintiff to supplement the record on Defendants' motion for partial summary judgment, during any objections to this Report-Recommendation.

---

[93]     (*See*, *e.g.*, Dkt. No. 16 [Pretrial Scheduling Order filed Aug. 9, 2006, establishing six and-a-half months until expiration of discovery period, on Feb. 28, 2007]; Dkt. No. 18 [Order filed Sept. 6, 2006, extending discovery deadline to Apr. 27, 2007]; Dkt. No. 27 [Order filed May 10, 2007, extending discovery deadline to June 8, 2007]; Dkt. No. 32 [Order filed June 21, 2007, extending plaintiff's time to seek discovery from Def. Boyea through Aug. 22, 2007]; Dkt. No. 63 [Order filed Feb. 11, 2008, granting in part Plaintiff's motion to compel discovery].)

[94]     (*See* Dkt. No. 64 [Order filed Feb. 15, 2008, granting Plaintiff an extension of time by which to file his opposition to Defendants' motion].)  I note this action has been pending now since October 3, 2005, long past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was passed.  *See Adelman v. Hobbie*, 03-CV-0032, 2006 WL 2639359, at *8 (N.D.N.Y. Sept. 13, 2006) (Sharpe, J., adopting Report-Recommendation by Treece, M.J.) (dismissing *pro se* civil rights action for failure to prosecute under Rule 41[b] in part because "[o]ver three years has passed since this litigation was commenced, well past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was instituted").

[95]     It should be noted that, under the Local Rules of Practice for this Court, when a party files a dispositive motion (such as a motion for summary judgment), the non-moving party is afforded an opportunity to file an opposition or "response," and then the moving party is afforded an opportunity to file a "reply."  N.D.N.Y. L.R. 7.1(b)(1).  "A surreply [by the non-moving party] is not permitted."  *Id*.  This rule is not a mere technicality, but a well-reasoned procedure premised, in part, on the fact that it is the movant who is shouldered with the ultimate burden on the motion and who therefore should be (for reasons of judicial efficiency and simple fairness) afforded the last word on the motion.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for partial summary judgment (Dkt. No. 54) be **GRANTED in part and DENIED in part**, in the following respects:

(1) that Plaintiff's retaliation claim under the First Amendment be **DISMISSED**; and

(2) that Plaintiff's conspiracy claim against Defendant Hunt be **DISMISSED**; but

(3) that Defendants' motion otherwise be **DENIED** without prejudice; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendants in their official capacities be *sua sponte* **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 12(h)(3).

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance.**[96]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

---

[96]     *See, supra,* note 92 of this Report-Recommendation.

48

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: September 2, 2008
        Syracuse, New York


George H. Lowe
United States Magistrate Judge